JOHN DALY, PLAINTIFF IN ERROR, *v.* THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANTS IN ERROR.

*Murder in the second degree — an intent to kill must be shown to sustain a conviction.*

Upon a Sunday evening the defendant and four other persons, all more or less under the influence of liquor, assaulted one Daly, threw him down, struck him with a stone and cut him with knives. Daly had been drinking with them, and the cause of the disagreement was not shown, nor was there any evidence to show that they intended to kill him. The wounds and cuts inflicted were not considered, by the physician who attended him, to be of a dangerous character. He died the next night, and a *post mortem* examination showed that his death resulted from meningitis, and that his disease had probably been produced by an injury to his head resulting from the blows or a fall.

*Held*, that there was no evidence from which a jury could infer an intent to kill with sufficient certainty to sustain a conviction of murder in the second degree.

WRIT of error to review the judgment of the Court of General Sessions of the county of New York, by which the plaintiff in error was convicted of the crime of murder in the second degree and sentenced to imprisonment in the State prison for life.

*Wm. F. Kintzing*, for the plaintiff in error.

*John Vincent*, assistant district attorney, for the defendants in error.

DANIELS, J. :

At the close of the trial and before the cause was submitted to the jury, the court was requested to hold and direct them that the defendant could not be convicted of the offense charged against him, in different counts of the indictment, as murder in the second degree. This was refused and exceptions were taken to the decisions

on behalf of the defendant. By the evidence it was made to appear that the defendant and four other persons, together assaulted and beat the deceased They had him down upon the street; one of them struck him with a stone and others cut him with knives.

What caused their disagreement. out of which this assault upon him originated, did not clearly appear. They all drank together, and Daly and the deceased scuffled together. He was also knocked down, and at least three of these persons were engaged in beating and cutting him while he was down. In doing this a stone was used by one of them, and knives by the others. But out of their preceding relations no evidence was given indicating that the assailants had any motive, or that it was any part of their design, to kill the deceased. The weapons and stone made use of were not applied in such a manner as to be evidence that they entertained that design, for none of the wounds made upon the deceased, as they were described, were so aimed or serious as, in the judgment of the first physician who was called and dressed them, could possibly be attended with the death of the deceased. While he had been struck upon his head, and wounds inflicted by cuts upon his body, they were neither of them, nor altogether, considered of a dangerous character, and were inflicted evidently more for the purpose of punishing the deceased on account of some unexplained disagreement, than with any intention to produce his death. This assault took place upon a Sunday night and he died the next night. A *post mortem* examination was made of his body, and it was found that he had died from what was stated by the surgeon to be meningitis. His statements of the wounds confirmed the description given by the physician who first examined and treated the deceased. But he added further, that it was probable that this disease had been produced by an injury to the head from the blows it had received, or from a fall; that under the circumstances they were likely to have been the cause developing this disease. But after allowing all the weight that can be given to the evidence of the surgeon making this final examination, nothing can be held to have been added to the case which would sustain the conclusion that in the blows which were inflicted, the defendant, or either of his associates, was actuated with the design to take the life of the deceased. It is highly probable that as they were all more or less affected by drinking,

that some common cause of disagreement arose between them, as is frequently the case with persons stimulated in this manner, leading them into the fight with the defendant, and that this was produced by such a provocation as induced them severely to chastise him, without intending to kill him. It was what may be called a drunken brawl, not infrequently resulting in more serious consequences than either of the persons engaged in it intend or expect. Neither the acts themselves, nor the instruments made use of, nor the wounds inflicted upon the body, with any reasonable degree of certainty, will sustain the conclusion that there was any intention on the part of either of the assailants to kill the person so assailed. The court, therefore, should have directed the jury that the defendant could not be convicted of the crime of murder in the second degree, for the existence of an intent to kill is indispensable under the statute to the commission of that offense. The offense committed by these persons was clearly one of manslaughter, not that of murder.

The judgment should therefore be reversed and a new trial ordered.

Brady, P. J., concurred.

Present — Brady, P. J., and Daniels, J.

Judgment reversed, and new trial ordered.